FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

APR -8 2009

JAMES W. McCORMACK, CLERK
By:_____
DEF CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case NO. 4:09CR00088 BSM |
| | ) | |
| V. | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 3013 |
| JAMES W. BELL | ) | 18 U.S.C. § 3571 |
|    a/k/a JIMMY BELL | ) | |
| JACK AARON | ) | |
| CHARLES HOOPER | ) | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## COUNT 1

(Conspiracy)

A.    INTRODUCTION

At various times relevant to this Indictment:

1. JAMES W. BELL a/k/a JIMMY BELL was the owner and operator of Bell's Texaco & Garage or Bell's Service Center (Bell's Texaco) in Blytheville, Arkansas.

2. JACK AARON was an employee of Bell's Texaco who had some managerial responsibilities.

3. CHARLES HOOPER was an employee of Bell's Texaco and worked as a mechanic.

4. Burlington Northern and Santa Fe Railway Company (BNSF) is an interstate rail carrier with home offices in Fort Worth, Texas and a regional office in Blytheville, Arkansas. Employees of BNSF use road vehicles, such as trucks, in their daily work activity.

5. Automotive Resources International (ARI) of Mount Laurel, New Jersey serves as the fleet manager for BNSF road vehicles, coordinating repairs at authorized service centers.

6. Bell's Texaco was an authorized service center of BNSF road vehicles. Since 1998, Bell's Texaco has called ARI with 223 purchase orders for service on BNSF vehicles, totaling in excess of $218,000. These costs were ultimately paid by BNSF.

7. In the normal course of business, for Bell's Texaco to get authorization to perform service work on BNSF vehicles, Bell's Texaco would call ARI in New Jersey by telephone, give ARI certain information, and in return get a purchase order number. The information that Bell's Texaco provided included: a) the BNSF unit number for the vehicle; b) the vehicle's odometer reading; and c) a description of the problem with the vehicle. ARI would sometimes authorize only a short amount of time for diagnostic work, after which, Bell's Texaco would call into ARI and provide a diagnosis. ARI would then authorize further repair work.

8. In the normal course of business, once the repairs to a vehicle were completed, Bell's Texaco would call ARI again and advise ARI that the service was completed. Typically, the total cost would be confirmed at that time, and the purchase order closed out.

9. ARI payments to Bell's Texaco was accomplished electronically, from ARI's bank located in Toronto, Ontario, Canada to Bell's Texaco account at Farmers Bank & Trust, Blytheville, Arkansas.

B.    THE CONSPIRACY

Beginning at a time unknown to the grand jury, but no later than January 26, 2000, and continuing thereafter up to and through in or about August, 2005, in the Eastern District of Arkansas and elsewhere, defendants JAMES W. BELL a/k/a JIMMY BELL, JACK AARON, and CHARLES HOOPER conspired with one another and with other persons known and unknown to the Grand Jury, to violate the laws of the United States, that is, to commit wire fraud in violation of Title 18, United States Code, Section 1343.

C.    MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that BELL entered into an agreement with ARI to provide Service to BNSF vehicles and become an authorized service center.

It was further part of the conspiracy that BELL, AARON, and HOOPER obtain odometer readings and vehicle unit numbers from BNSF vehicles.

It was further part of the conspiracy that BELL, AARON, and HOOPER call ARI stating the service to be provided and obtaining authorization to perform the work.

It was further part of the conspiracy that BELL, AARON, and HOOPER call ARI stating the service previously authorized had been completed and confirming the payment amount.   In the normal course of business, after the work has been completed ARI electronically advances funds in the amount of the transaction to Bell's Texaco bank account, less a processing fee.   It was further part of the conspiracy that BELL, AARON, and HOOPER, through Bell's Texaco, receive payment from ARI for work claimed to have been performed on BNSF vehicles, when in truth and in fact no work had been performed on the vehicle equal to the claim.

D.    OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Eastern District of Arkansas and elsewhere:

Those acts set forth in paragraphs 3-8 of Counts 2-52 of the Indictment.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 52

1.    The Grand Jury realleges each allegation contained in paragraphs A1 through A9 of Count 1 and incorporates them as if fully set forth herein.

2.    Beginning at a time unknown to the grand jury, but no later than January 26, 2000, and continuing thereafter up to and through in or about August, 2005, in the Eastern District of Arkansas, and elsewhere,

JAMES W. BELL, a/k/a  JIMMY BELL

JACK AARON,
and
CHARLES HOOPER

together with other individuals known and unknown to the Grand Jury, aiding and abetting one another, devised and participated in a scheme or artifice to defraud BNSF.

3. It was part of the scheme to defraud that BELL enter into an agreement with ARI to provide Service to BNSF vehicles and become an authorized service center.

4. It was further part of the scheme to defraud that BELL, AARON, and HOOPER obtain odometer readings and vehicle unit numbers from BNSF vehicles.

5. It was further part of the scheme to defraud that BELL, AARON, and HOOPER call ARI stating the service to be provided and obtaining authorization to perform the work.

4

6. It was further part of the scheme to defraud that BELL, AARON, and HOOPER call ARI stating the service previously authorized had been completed and confirming the payment amount.   In the normal course of business, after the work has been completed ARI electronically advances funds in the amount of the transaction to Bell's Texaco bank account, less a processing fee.

7. It was further part of the scheme to defraud that BELL, AARON, and HOOPER, through Bell's Texaco, receive payment from ARI for work claimed to have been performed on BNSF vehicles, when in truth and in fact no work had been performed on the vehicle equal to the claim.

8. As part of the scheme to defraud, and to execute the scheme as set forth above, the below listed defendants did cause to be transmitted in interstate commerce, by means of a wire communication, certain signals and sounds, that is, a wire transfer of funds from an account of ARI at Bank of Montreal, a bank located in Toronto, Ontario, Canada, to an account controlled by JAMES W. BELL a/k/a JIMMY BELL in the name of Bell's Texaco at Farmers Bank & Trust, Blytheville, Arkansas, that is, the below listed wire deposit on or about the date stated, each transaction constituting a separate charge:

| DEFENDANT | COUNT | AMOUNT | DATE |
|-----------|-------|--------|------|
| BELL | 2 | $   888.76 | 04/22/2004 |
| BELL | 3 | $  579.67 | 05/03/2004 |
| BELL | 4 | $1,451.83 | 06/11/2004 |
| BELL | 5 | $1,039.01 | 07/12/2004 |
| BELL | 6 | $1,361.85 | 07/30/2004 |

| DEFENDANT | COUNT | AMOUNT | DATE |
|---|---|---|---|
| BELL | 7 | $2,310.20 | 08/20/2004 |
| BELL | 8 | $1,285.44 | 09/02/2004 |
| BELL HOOPER | 9 | $1,429.57 | 09/14/2004 |
| BELL | 10 | $1,779.12 | 09/24/2004 |
| BELL | 11 | $   900.76 | 10/01/2004 |
| BELL | 12 | $   726.26 | 10/18/2004 |
| BELL AARON | 13 | $ 1,074.56 | 10/29/2004 |
| BELL | 14 | $ 1,149.80 | 11/24/2004 |
| BELL | 15 | $   353.94 | 11/29/2004 |
| BELL | 16 | $   739.69 | 12/13/2004 |
| BELL AARON | 17 | $ 2,171.37 | 12/17/2004 |
| BELL AARON | 18 | $ 1,452.88 | 12/14/2004 |
| BELL | 19 | $ 1,805.78 | 12/24/2004 |
| BELL | 20 | $   907.54 | 12/31/2004 |
| BELL AARON | 21 | $   508.13 | 01/07/2005 |
| BELL HOOPER | 22 | $   630.34 | 01/07/2005 |
| BELL AARON | 23 | $ 2,712.22 | 01/11/2005 |
| BELL | 24 | $ 1,687.08 | 01/12/2005 |
| BELL | 25 | $ 2,816.74 | 01/13/2005 |
| BELL AARON | 26 | $ 2,866.55 | 01/18/2005 |

| DEFENDANT | COUNT | AMOUNT | DATE |
|---|---|---|---|
| BELL AARON HOOPER | 27 | $ 2,691.70 | 01/24/2005 |
| BELL AARON | 28 | $ 2,538.51 | 01/27/2005 |
| BELL AARON | 29 | $ 1,447.05 | 02/17/2005 |
| BELL AARON | 30 | $ 1,605.48 | 02/18/2005 |
| BELL AARON | 31 | $     255.55 | 02/23/2005 |
| BELL AARON | 32 | $ 1,785.63 | 03/01/2005 |
| BELL AARON | 33 | $     650.68 | 03/04/2005 |
| BELL | 34 | $ 1,546.13 | 03/10/2005 |
| BELL | 35 | $     627.36 | 03/11/2005 |
| BELL AARON | 36 | $     657.55 | 03/25/2005 |
| BELL AARON | 37 | $ 1,085.29 | 04/14/2005 |
| BELL AARON | 38 | $     969.12 | 04/22/2005 |
| BELL | 39 | $     596.20 | 04/22/2005 |
| BELL AARON | 40 | $ 3,603.06 | 04/28/2005 |
| BELL AARON | 41 | $ 1,084.62 | 05/16/2005 |
| BELL AARON | 42 | $     982.79 | 05/23/2005 |
| BELL | 43 | $ 1,066.61 | 05/27/2005 |

| DEFENDANT | COUNT | AMOUNT | DATE |
|---|---|---|---|
| BELL AARON | 44 | $ 1,151.39 | 06/07/2005 |
| BELL AARON HOOPER | 45 | $ 2,489.82 | 06/24/2005 |
| BELL AARON HOOPER | 46 | $ 1,018.93 | 07/06/2005 |
| BELL AARON | 47 | $   948.45 | 07/14/2005 |
| BELL | 48 | $ 1,065.02 | 07/21/2005 |
| BELL AARON | 49 | $ 1,574.22 | 07/22/2005 |
| BELL | 50 | $ 1,122.29 | 08/03/2005 |
| BELL | 51 | $ 1,072.98 | 08/15/2005 |
| BELL AARON | 52 | $   850.95 | 08/17/2005 |

All in violation of Title 18, United States Code, Section 1343.

(END OF TEXT.  SIGNATURE PAGE ATTACHED)